T.C. Memo. 2013-151

UNITED STATES TAX COURT

PATRICK D. MONTGOMERY AND PATRICIA A. MONTGOMERY,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25089-10.                    Filed June 17, 2013.

Patrick D. Montgomery and Patricia A. Montgomery, pro sese.

<u>Christopher A. Pavilonis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent in this case (the IRS) issued a notice

of deficiency to petitioners Patrick D. Montgomery and Patricia A. Montgomery.

In the notice the IRS determined a deficiency of $7,174 for tax year 2005, a

deficiency of $164,612 for 2006, and an addition to tax under section 6651(a)(1)

**[*2]** of $3,836.66 for 2006.  Some adjustments in the notice of deficiency have been settled.  The issues remaining for decision are:

(1)     Did Patricia Montgomery materially participate in UDI Underground, LLC, in 2007?  We hold that she did materially participate.

(2)     What are the section 1366(d)(1) limits on Patrick and Patricia Montgomery's shares of losses of Utility Design, Inc., for the tax year 2007?  We hold that the limit for Patrick Montgomery is $95,591 and the limit for Patricia Montgomery is $1,781.

(3)     Are the Montgomerys liable for an addition to tax under section 6651(a)(1)?  We hold that they are liable.

All section references are to the Internal Revenue Code as in effect in the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

At the time of filing their petition, and at all other relevant times, the Montgomerys were a married couple residing in Florida.

Before 2005 the Montgomerys moved from Ohio to Florida to take over the operations of Utility Design, Inc., from Patrick's father.  During 2007 Utility

**[*3]** Design, Inc., was an S corporation in which both Patrick Montgomery and Patricia Montgomery were shareholders.

Utility Design, Inc., performed engineering work on telephone-related infrastructure. Because of conflict-of-interest rules, it could not perform construction work on the same projects for which it performed engineering work. Patrick Montgomery decided to form a separate entity to perform construction work on telephone-related infrastructure. The new entity, UDI Underground LLC, began operations on April 2, 2007.

For the 2007 taxable year UDI Underground, LLC, was a limited liability corporation that was treated as a partnership for federal income tax purposes. It filed a Form 1065, U.S. Return of Partnership Income. The Form 1065 stated that the members of UDI Underground, LLC, were:

| Name | Type of member | Ownership interest |
|---|---|---|
| Zach Durant | LLC member-manager | 10% |
| Patricia Montgomery | Other LLC member | 40% |
| Ander Roth | Other LLC member | 15% |
| Charles Roth | Other LLC member | 15% |
| Curry Meadows Properties, LLC | Other LLC member | 20% |

**[*4]** Consistent with the Form 1065, the IRS contends that Patricia Montgomery was a 40% member of UDI Underground, LLC, and Patrick Montgomery was not a member. The Montgomerys' litigation position regarding their respective membership interests in UDI Underground, LLC, is unclear. We find that Patricia Montgomery was a 40% member and Patrick Montgomery was not a member. We also find that Zach Durant was the member-manager of UDI Underground, LLC, during 2007.

Utility Design, Inc., borrowed the following amounts in 2006 and 2007: (1) $1 million from SunTrust Bank on August 25, 2006, (2) $60,000 from Patrick Montgomery on September 26, 2007, (3) $30,000 from Patrick Montgomery on October 5, 2007, and (4) $15,000 from Patrick Montgomery on November 13, 2007. The Montgomerys personally guaranteed the $1 million loan from SunTrust Bank.

Patricia Montgomery acted as an office manager for UDI Underground, LLC, in 2007. Patrick Montgomery managed the company's operations and worked to secure a contract with AT&T.

The Montgomerys filed their 2006 income-tax return on November 2, 2007. They requested and received an extension of the time to file, so the return was due on October 15, 2007.

**[*5]**  Patrick Montgomery and Patricia Montgomery both received Forms W-2, Wage and Tax Statement, from Utility Design, Inc., for the 2007 tax year.  They reported the Form W-2 amounts on their joint Form 1040, U.S. Individual Income Tax Return, for 2007.  Neither received Forms W-2 from UDI Underground, LLC, for 2007.  They did not report receiving salary or wage income from UDI Underground, LLC, on their joint federal income-tax return.

Around December 2008 Utility Design, Inc., defaulted on the $1 million loan from SunTrust Bank.  The Montgomerys thus became liable for that debt through their personal guarantees of the loan.  The Montgomerys defaulted on the debt, and in November 2009 a judgment was issued against them for $425,169.54.

OPINION

A net operating loss for a tax year is defined as the excess of a taxpayer's deductions for the year over gross income.  Sec. 172(c).  A net operating loss for a tax year is carried back to the two tax years preceding the tax year.  Sec. 172(b)(1)(A)(i).  Net operating loss carrybacks are deductions for the preceding two tax years.  Sec. 172(a).  The Montgomerys claim that they had a joint net operating loss in 2007 and that the loss is carried back to 2005 and 2006.  In their calculation of their joint net operating loss for 2007 they included:  (1) losses UDI Underground, LLC, incurred in 2007 that were allegedly passed through to

**[\*6]** Patricia Montgomery as a 40% member of UDI Underground, LLC, and (2) losses Utility Design, Inc., incurred in 2007 that were allegedly passed through to Patrick Montgomery and Patricia Montgomery, who were both shareholders in Utility Design, Inc. The IRS challenges the amount of the net operating loss for 2007 on two grounds: (1) that Patricia Montgomery did not materially participate in UDI Underground, LLC, during 2007, and (2) that portions of Patrick and Patricia Montgomery's passthrough losses from Utility Design, Inc., are disallowed under section 1366(d)(1).

The taxpayer generally bears the burden of proof unless the conditions in section 7491(a) are satisfied. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Our holding that Patricia Montgomery materially participated in UDI Underground, LLC, during 2007, is supported by the preponderance of evidence. See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998). Thus, it is unnecessary to determine which party (i.e., the Montgomerys or the IRS) has the burden of proof regarding the factual issues underlying the question of whether Patricia Montgomery materially participated in UDI Underground, LLC, during 2007. The Montgomerys have not convinced us that they met the conditions in section 7491(a) with respect to any disputed factual issues underlying the amounts

**[*7]** disallowed under section 1366(d)(1). Therefore, the Montgomerys have the burden of proof with respect to all disputed factual issues underlying that issue.

1. <u>Did Patricia Montgomery materially participate in UDI Underground, LLC, in 2007?</u>

A portion of the Montgomerys' claimed joint net operating loss for 2007 stems from losses UDI Underground, LLC, incurred that were allegedly passed through to Patricia Montgomery as a 40% member of UDI Underground, LLC. The IRS contends that some or all of her share of these losses is disallowed under section 469(a), which disallows a taxpayer's passive-activity loss for the year. A passive-activity loss is equal to the aggregate income from all the taxpayer's passive activities minus the aggregate losses from all the taxpayer's passive activities. Sec. 469(d)(1). In the IRS's view, Patricia Montgomery's activities with respect to UDI Underground, LLC, are a passive activity within the meaning of section 469(c)(1). The petitioners contend that Patricia Montgomery's activities with respect to UDI Underground, LLC, are not a passive activity.

A passive activity is defined as any activity which involves the conduct of any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). "Participation" generally means all work done in connection with an activity by the taxpayer. Sec. 1.469-5(f), Income Tax Regs. An individual

[*8] taxpayer's participation in an activity is material if he or she is involved on a regular, continuous, and substantial basis. Sec. 469(h)(1). An individual taxpayer is considered to have materially participated in an activity if and only if any one of seven tests set forth in the regulations is met. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); Garnett v. Commissioner, 132 T.C. 368, 372 n.10 (2009). We hold that Patricia Montgomery's activities with respect to UDI Underground, LLC, meet the first and seventh tests, which are:[1] (1) the individual participates in the activity for more than 500 hours during such year; and (7) on the basis of all of the facts and circumstances, the individual's participation was regular, continuous, and substantial during such year. Sec. 1.469-5T(a), Temporary Income Tax Regs., supra.[2]

In determining whether any of the seven tests are satisfied, the participation of the individual's spouse is taken into account. Sec. 469(h)(5); see 1.469-

---

[1]Since the first and seventh tests are met, it is unnecessary to consider whether any of the other five tests are met. Furthermore, the Montgomerys do not contend that any of the other five tests are met.

[2]Under the seventh test, which is worded similarly to the statute itself, an individual is treated as materially participating in an activity if "[b]ased on all the facts and circumstances * * *, the individual participates in the activity on a regular, continuous, and substantial basis". Sec. 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

**[*9]** 5T(f)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

Therefore, Patrick Montgomery's participation in UDI Underground, LLC, is counted in determining whether Patricia Montgomery materially participated.

Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), sets forth rules for the type of proof to be considered in determining the extent of an individual's participation in an activity. It states:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

For 2007 the Montgomerys credibly testified that Patricia Montgomery handled all of the office functions, managed payroll, prepared documents, met with members of the company and attended business meetings. Additionally, Patrick Montgomery credibly testified that Patricia Montgomery worked on company matters daily and discussed the company's business with him daily.

Patrick Montgomery started the company in 2007 and brought in other individuals as investors. He secured a contract with AT&T. He handled various

**[*10]** operational aspects of the business including arranging the construction work, buying equipment, and hiring and firing employees.

Both Patricia Montgomery and Patrick Montgomery were integral in the process of setting up and establishing UDI Underground, LLC. The company began in April 2007 with no employees. The Montgomerys hired 250 employees on behalf of UDI Underground, LLC, by the end of 2007. Although the Montgomerys performed some services for Utility Design, Inc., during 2007, this older company already had established its business operations. The Montgomerys spent more of their work time on UDI Underground, LLC, than on Utility Design, Inc. They did not hold any jobs outside the two companies. They credibly testified that they worked thousands of hours for UDI Underground, LLC, during 2007. We find that the Montgomerys participated in UDI Underground, LLC, for more than 500 hours during 2007. On the basis of all the facts and circumstances we also find that the Montgomerys participated in UDI Underground, LLC, on a regular, continuous, and substantial basis during 2007.

The IRS argues that the types of proof the Montgomerys presented do not satisfy section 1.469-5T(f)(4), Temporary Income Tax Regs., supra. The Montgomerys readily admit that they did not maintain reports or logs of their hours. However, under the regulation, "daily time reports, logs, or similar

**[\*11]** documents are not required if \* \* \* participation may be established by other reasonable means." Id. The Montgomerys provided details of the nature of the activities they conducted in starting and managing UDI Underground, LLC. The tasks they described included founding the company, negotiating contracts with AT&T, hiring 250 employees, and conducting daily business. They credibly testified they worked on the business "day in and day out." They were credible witnesses and were forthcoming with information about their activities regarding UDI Underground, LLC. We find that the proof the Montgomerys provided meets the requirements of section 1.469-5T(f)(4), Temporary Income Tax Regs., supra.

We hold that Patricia Montgomery materially participated in the activities of UDI Underground, LLC, during 2007.

2.  <u>What are the section 1366(d)(1) limits on the amounts of losses taken into account with respect to Patrick Montgomery's and Patricia Montgomery's shares of the S Corporation Utility Design, Inc.?</u>

A portion of the Montgomerys' claimed joint net operating loss for 2007 stems from losses Utility Design, Inc., incurred for its 2007 tax year and that were allegedly passed through to Patrick Montgomery and Patricia Montgomery as shareholders of Utility Design, Inc., for their 2007 tax year. The parties dispute the amounts by which the losses are limited by section 1366(d)(1).

**[*12]** Section 1366(a) requires S corporation shareholders, when calculating their taxable income for the year, to take into account their pro rata share of the S corporation's items of income, loss, deduction, or credit for the S corporation's tax year that ends in the tax year of the shareholder. Sec. 1.1366-1(a), Income Tax Regs. However, the S corporation's loss taken into account by a shareholder cannot exceed the amount calculated under section 1366(d)(1) for the shareholder for the tax year of the corporation.

The 2007 tax year of Utility Design, Inc., ended on December 31, 2007. The 2007 tax year of the Montgomerys also ended on December 31, 2007. Therefore, Utility Design, Inc.'s losses for 2007 pass through to the Montgomerys for their 2007 tax year. However, Patrick and Patricia Montgomery each has a section 1366(d)(1) limitation for the respective losses passed through from Utility Design, Inc.,'s 2007 tax year.

The section 1366(d)(1) limitation is equal to the shareholder's adjusted basis of stock at the end of the corporation's tax year of the loss, plus the shareholder's adjusted basis of any debt of the S corporation to the shareholder at the end of the corporation's year of the loss. Sec. 1366(d)(1)(A) and (B); <u>see</u> secs. 1.1366-2(a)(3), 1.1367-1(d)(1), 1.1367-2(d), Income Tax Regs.

**[*13]** Thus, the section 1366(d)(1) limitation has two components: (1) a stock portion, i.e., the shareholder's adjusted basis of stock of the S corporation at the end of the year of loss, and (2) a debt portion, i.e., the shareholder's adjusted basis of debt of the S corporation to the shareholder at the end of the year of loss. See sec. 1.1366-2(a), Income Tax Regs.

Like the adjusted basis of any property, the adjusted bases of stock and debt of an S corporation are determined under general rules set forth under section 1011. See sec. 1.1367-1(a)(2), Income Tax Regs. (besides adjustments to basis required by section 1367, other adjustments to basis of stock are determined under other applicable provisions of the Internal Revenue Code).[3] The adjusted basis of

---

[3]Sec. 1.1367-1(a)(2), Income Tax Regs., discusses adjustments to basis of S corporation stock, not debt. Sec. 1.1367-2, Income Tax Regs., its counterpart for S corporation debt, makes no explicit statement that basis rules from other parts of the Code apply to S corporation debt as sec. 1.1367-1(a)(2), Income Tax Regs., does for stock. However, a leading treatise opines that the general basis rules govern debt of S corporations to their shareholders:

> The Code contains many rules that may affect the basis of stock or debt in the hands of a shareholder. In general, those rules may apply to the stock or debt of an S corporation.[20]

> [20]Treas. Reg. § 1.1367-1(a)(2) provides that other rules in the Code may affect the basis of an S corporation's stock. Treas. Reg. § 1.1367-2 does not make the same statement regarding an S corporation's debt, but the same principle should apply.

(continued...)

**[*14]** property is equal to its initial basis supplemented with adjustments. Sec.

1011(a). The initial basis of property generally is the cost of the property. Sec.

1012(a); sec. 1.1012-1(a), Income Tax Regs. The initial basis of stock generally is

the cost of the stock. Estate of Leavitt v. Commissioner, 90 T.C. 206, 212 (1988),

aff'd, 875 F.2d 420 (4th Cir. 1989). The initial basis of debt is the cost of the debt

to the lender; i.e., the amount of principal advanced by the lender. See Tigers Eye

Trading, LLC v. Commissioner, 138 T.C. 67, 122 (2011) ("[A] shareholder in an S

corporation has a separate tax basis in loans the shareholder makes to the S

corporation equal to the amount of the loans." (Emphasis added.)); see also

Deborah H. Schenk, Federal Taxation of S Corporations, sec. 7.06[3] (2013)

(LEXIS) ("The shareholder's basis in corporate debt ordinarily is the amount of

money loaned to the corporation.").

In addition to the general rules for determining basis (i.e., those found in

section 1011), there are special rules that require annual adjustments to the

---

[3](...continued)

\*       \*       \*       \*       \*       \*       \*

[30]A corporate debt obligation should be "property" for the
purposes of IRC § 1012.

James S. Eustice & Joel D. Kuntz, Federal Income Taxation of S Corporations,
par. 9.02 & n.20, 9.02[1][b] n.30 (4th ed. 2001).

**[*15]** shareholder's adjusted basis of stock of an S corporation and to the shareholder's adjusted basis of debt of the S corporation to the shareholder. These rules are found in section 1367(a) and 1367(b)(2), respectively. See also secs. 1.1367-1(a)(1), (b), (c), 1.1367-2, Income Tax Regs. According to regulations, the adjustments are "determined as of the close of the corporation's taxable year, and the adjustments generally are effective as of that date." Secs. 1.1367-1(d)(1) (stock), 1.1367-2(d)(1) (debt), Income Tax Regs. For the purposes of calculating the components of the section 1366(d)(1) limitation for a particular year, only certain of the special adjustments for the year are taken into account. These are set forth in section 1366(d)(1). See also sec. 1.1366-2(a)(3)(I) and (ii), Income Tax Regs.

The first component of the section 1366(d)(1) limitation for Utility Design, Inc.'s 2007 year, i.e., the stock component, is equal to:

- the adjusted basis of the stock at the beginning of 2007,

- supplemented by the general basis adjustments during 2007,

- and then adjusted by the appropriate special adjustments for 2007.

The second component of the section 1366(d)(1) limitation for Utility Design, Inc.'s 2007 year, i.e., the debt component, is equal to:

- the adjusted basis of debt at the beginning of 2007 year,

[*16]   •      supplemented by the general basis adjustments during 2007,

•      and then adjusted by the appropriate special adjustments for 2007.

In determining the section 1366(d)(1) limitation amounts, we begin with the adjusted bases of stock and debt at the beginning of Utility Design, Inc.'s 2007 year. The IRS contends that the adjusted bases of stock and debt were zero for Patrick Montgomery and zero for Patricia Montgomery. The Montgomerys contend that the adjusted bases were $424 for Patrick Montgomery and $200 for Patricia Montgomery. The Montgomerys have adduced no evidence to support their claim that the bases were $424 and $200 at the beginning of 2007. They cite "IRS Work paper #: 504-1.2" to support their claim. They assert in their brief that this workpaper substantiates the following propositions: "Patrick Montgomery's basis in his UDI [an abbreviation for Utility Design, Inc.] stock was $800 as of 1-1-07. If this is allocated between Patrick and Patricia, he would get 53%, or $424, and Patricia would get 25%, or $200."[4] But the workpaper is not in the record. Therefore, we cannot rely on it. The Montgomerys also claim that their 2007 amended return (and the Schedule E, Supplemental Income and Loss, attached to

_____

[4]The Montgomerys assert that "IRS Work paper #:504-1.2" states that Patrick Montgomery owned 53% of the shares of Utility Design, Inc., and Patricia Montgomery owned 25% of the shares. However, it is unclear why, if Patrick Montgomery's basis alone was $800, the Montgomerys would want to take further steps to allocate that basis between them.

[*17] it) support their beginning-of-the-year adjusted basis figures of $424 and $200. They do not explain how the return supports their contention, and nothing on the return appears to show either a total basis of $800 in Utility Design, Inc.'s stock on January 1, 2007, or bases of $424 and $200 in Patrick and Patricia Mongtomery's respective shares. Therefore, we hold that the adjusted bases of stock and debt were zero for both Patrick Montgomery and Patricia Montgomery at the beginning of 2007.

We now consider the effect of year-of-loss special adjustments on bases of stock and debt. Neither party contends that any special adjustments for 2007 should be made. We conclude that no special adjustments for 2007 should be made to the adjusted basis of the stock or debt components.

We now consider the effect of general basis adjustments to stock and debt for events occurring in 2007. In its brief the IRS contends that the general basis adjustments to stock and debt result in an end-of-year limitation for both stock and debt of $95,591. (These adjustments include increases of $105,000 in Patrick Montgomery's limitation amount for loans he made to Utility Design, Inc., in 2007, i.e., the September 26, 2007 loan of $60,000, the October 5, 2007 loan of $30,000, and the November 13, 2007 loan of $15,000.) The Montgomerys do not challenge these general 2007 basis adjustments except that they assert that Patrick

**[*18]** Montgomery's adjusted basis in debt of Utility Design, Inc., to him should be increased by $425,169,54 to reflect that in 2009 a judgment was imposed on the Montgomerys as a result of their guarantee of the $1 million loan SunTrust Bank made to Utility Design, Inc., in 2006.[5] Thus, the only remaining issue to resolve regarding the section 1366(d) limit is to determine the effect of this judgment on the basis of debt owed by Utility Design, Inc., to Patrick Montgomery.

When an S corporation shareholder guarantees a loan by a bank to the S corporation, no debt has been created between the S corporation and the shareholder. See Underwood v. Commissioner, 63 T.C. 468, 475-476 (1975), aff'd, 535 F.2d 309, 311-312 (5th Cir. 1976); Perry v. Commissioner, 47 T.C. 159, 163 (1966), aff'd, 392 F.2d 458 (8th Cir. 1968). However, once the S corporation shareholder pays the bank pursuant to a guarantee, the S corporation becomes indebted to the shareholder. As we held in Underwood v. Commissioner, 63 T.C. at 476, "it is the payment by the guarantor of the guaranteed obligation that gives rise to indebtedness on the part of the debtor to the guarantor. The mere fact that the debtor defaults and thereby renders the guarantor liable is not sufficient." Patrick Montgomery did not make any payments on the SunTrust Bank loan

---

[5]The judgment was against both Montgomerys. It is unclear why they contend Patrick Montgomery's basis in debt should be increased but Patricia Montgomery's basis in debt should not.

[*19] during 2007.  Therefore his guarantee of the SunTrust Bank loan did not give rise to a debt to him from Utility Design, Inc., during 2007.[6]

In conclusion, we hold that the basis limitation for Patrick Montgomery's share of Utility Design, Inc., was $95,591 for 2007.  Patricia Montgomery's limitation was $1,781.

3.   Are the Montgomerys Liable For an Addition to Tax Under Section 6651(a)(1)?

Section 6651(a)(1) imposes an addition to tax of 5% of the "amount required to be shown as tax on * * * [a] return" for failure to file if "the failure is for not more than 1 month".  The addition to tax is imposed unless a taxpayer has

---

[6]The Montgomerys rely on Gilday v. Commissioner, T.C. Memo. 1982-242, 1982 Tax Ct. Memo LEXIS 512.  In Gilday, shareholders of an S corporation that owed a debt to a bank gave the bank a personal note for the amount of the S corporation's debt.  In exchange, the bank canceled the debt of the S corporation.  The shareholders thus "moved from positions as guarantors of corporate debt to positions as primary obligors." Id., 1982 Tax Ct. Memo LEXIS 512, at *6.  Patrick Montgomery did not move to the position as primary obligor in 2007.

We also note for the sake of completeness that the U.S. Court of Appeals for the Eleventh Circuit, the court to which this case could be appealed, held in Selfe v. United States, 778 F.2d 769 (11th Cir. 1985), that there is an exception to the rule that guaranteeing a debt of an S corporation is insufficient to increase basis.  The Montgomerys do not attempt to rely on Selfe, and the record does not demonstrate that the loan from SunTrust Bank falls within this limited exception.  Unlike the Montgomerys, the taxpayer in Selfe had undertaken a loan personally which was then assumed by an S corporation (with the taxpayer guaranteeing the loan).  Testimony from a bank officer showed that the bank still "look[ed] [primarily] to the shareholder as the primary obligor." Id. at 774.  No such evidence from the lender is in the record before us.

[*20] reasonable cause for filing late.  Id.  Taxpayers bear the burden of proving "reasonable cause" under section 6651(a).  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  The Montgomerys filed their income tax return on November 2, 2007.  They had filed for an extension of the due date; their tax return was due on October 15, 2007.  Because the Montgomerys filed their return late and do not claim that they had reasonable cause for doing so, we hold that they are responsible for a 5% addition to tax for the 2006 tax year.

We have considered all of the arguments the parties have made, and to the extent that we have not discussed them, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.